Name : John Doe
c/o AFLC -Civil Recovery Division .
10 Brookley Ave. #8329 ,
Bolling Air Force Base
US Department of Defense
Washington DC 20032.
Phone /Fax :(614)343-6510.
Email:
info@airforcelawcenter.org

**US DISTRICT COURT**
**DISTRICT OF COLUMBIA DISTRICT COURT**

John Doe ,
on behalf of himself in his individual capacity, his U.S. Military and U.S. Government duties, and the interests of the United States Government/Military,

Plaintiff

vs.

SOCIALIST REPUBLIC of VIET NAM

ISLAMIC REPUBLIC OF IRAN

TO LAM (MINISTER OF MINISTRY of PUBLIC SECURITY )

NGUYEN VAN NHIEM ( AGENT OF SOCIALIST REPUBLIC OF VIETNAM).
NGUYEN VAN TRUC (A US CITIZEN -AN AGENT OF SOCIALIST REPUBLIC OF VIETNAM ).
DANG XUAN HONG ( AN AGENT OF SOCIALIST REPUBLIC OF VIETNAM ).
LE HONG NAM ( HEAD OF HO CHI MINH CITY PUBLIC SECURITY DEPARTMENT).
LE QUANG DAO (INTELLIGENCE HEAD OF HO CHI MINH CITY PUBLIC SECURITY DEPARTMENT).
NGUYEN QUANG THONG ( AN AGENT OF DISTRICT 11 POLICE - HO CHI MINH CITY )
NGO QUANG THE (CHIEF OF WARD 05

Case : 1:25-cv-03226-CJN.

# PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS, PROTECTIVE RELIEF, EVIDENCE PRESERVATION, AND REFERRAL OF FOREIGN-RETALIATION AND SANCTIONS-RELATED CONDUCT

# FOR :

**COMPLAINT FOR DAMAGES** :

**1/REMEDIES UNDER TORTURE VICTIM PROTECTION ACT .**
2/REMEDIES UNDER **28 U.S.C. § 1605B** . **Justice For United States Victims Of State Sponsored Terrorism.**
3/REMEDIES UNDER RELATED FEDERAL CAUSES OF ACTIONS .

Request For JURY TRIAL .
Most Remedies will be donated to American Disabled Veterans /Military Gold Star Family Fund -US Department of Defense /Department of Veterans Affairs .

DISTRICT 11 POLICE -HO CHI MINH CITY )
THAN TRONG BINH ( VICE CHIEF OF WARD 05 DISTRICT 11 POLICE -HO CHI MINH CITY ).
LUU TAN LOI ( UNDERCOVER OF HO CHI MINH CITY POLICE DEPARTMENT)
VU MANH CUONG ( IMMIGRATION POLICE, HO CHI MINH CITY ).
LY HOAI SON ( AGENT OF WARD 05 DISTRICT 11 HO CHI MINH CITY POLICE ).

LE HOANG BAO ( DISTRICT 07 POLICE HO CHI MINH CITY )
LE MINH HAI ( CYBER SECURITY DEPARTMENT OF HO CHI MINH CITY )
NGUYEN VAN HA ( CYBER SECURITY DEPARTMENT OF HO CHI MINH CITY )
DO HOANG VIET ( UNDERCOVER AGENT )
VU THE SON ( UNDERCOVER AGENT )
NGUYEN TUAN ANH ( UNDERCOVER AGENT )
LE VAN TU ( UNDERCOVER AGENT )
NGUYEN NGOC SON ( COLONEL -UNDERCOVER AGENT ).
MOHAMED MANASTRA ( AGENT, ISLAMIC REVOLUTIONARY GUARD CORPS/HEZBOLLAH);
ATIR MANASTRA ( AGENT, ISLAMIC REVOLUTIONARY GUARD CORPS/HEZBOLLAH);

Does 1-100

Defendants.

# TABLE OF CONTENTS


| Section | Page |
|---|---|
| **I. INTRODUCTION** | **5** |
| **II. FACTUAL BASIS FOR SANCTIONS** | **6** |
| A. Vietnam's Revocation of Plaintiff's Visa | 6 |
| **III. THE REVOCATION SHOULD BE CONSIDERED TOGETHER WITH THE THREATS AGAINST PLAINTIFF** | **6** |
| **IV. RETALIATION AGAINST A LITIGANT MAY WARRANT JUDICIAL PROTECTION** | **7** |
| **V. THE COURT SHOULD NOT PERMIT FOREIGN GOVERNMENTAL PRESSURE TO SUBSTITUTE FOR A JUDICIAL RESPONSE** | **7** |
| **VI. THE IRAN-RELATED EVIDENCE SHOULD BE PRESENTED AS EVIDENCE OF POSSIBLE SANCTIONS-RELATED CONDUCT, NOT AS A CONCLUSIVE FINDING** | **8** |
| **VII. REQUEST FOR REFERRAL TO THE APPROPRIATE FEDERAL AUTHORITIES** | **9** |
| **VIII. FARA EVIDENCE SHOULD BE REFERRED FOR INVESTIGATION, NOT TREATED AS A CONCLUSIVE VIOLATION** | **9–10** |
| **IX. SANCTIONS SHOULD BE TAILORED TO THE COURT'S AUTHORITY** | **10** |
| A. Litigation Sanctions | 10 |
| B. Protective Order | 10 |
| C. Evidence Preservation | 10 |
| D. Discovery | 10 |
| E. Referral | 11 |
| F. Other Appropriate Relief | 11 |
| **X. THE COURT SHOULD NOT DIRECTLY IMPOSE EXECUTIVE-BRANCH VISA OR OFAC SANCTIONS** | **11** |
| **XI. ARGUMENT** | **11** |
| A. The Court Possesses Inherent Authority to Sanction Bad-Faith Abuse of Its Judicial Process | 11 |
| B. The Evidence Warrants Preservation and Judicial Investigation | 12 |
| C. Retaliatory Conduct Directed at a Federal Litigant Is Material to the Court's Management of the Case | 12 |
| D. Iran-Related Evidence Supports Referral Where It Shows Possible Prohibited Transactions or Sanctions Evasion | 12 |
| **XII. REQUEST FOR RELIEF** | **13** |
| **DECLARATION OF JOHN DOE** | **14–15** |
| **AUTHORITIES** | **16–24** |
| 1. Chambers v. NASCO, Inc. | 16 |
| 2. Federal Rule of Civil Procedure 11 | 16 |
| 3. Federal Rule of Civil Procedure 37 | 16 |
| 4. 28 U.S.C. § 1927 | 16 |

| **Section** | **Page** |
|---|---|
| 5. 28 U.S.C. § 1651 | 16 |
| 6. 22 U.S.C. § 611 et seq. — FARA | 16 |
| 7. 22 U.S.C. § 612 | 16 |
| 8. 28 C.F.R. Part 5 | 16 |
| 9. Iran Sanctions Authorities | 16–17 |
| A. Executive Order 13871 | 17 |
| B. Executive Order 13876 | 17–18 |
| C. Executive Order 13902 | 18 |
| D. Executive Order 13949 | 18 |
| E. IEEPA, 50 U.S.C. §§ 1701–1706 | 19 |
| F. National Emergencies Act, 50 U.S.C. §§ 1601–1651 | 19 |
| G. OFAC Regulations | 19–20 |
| I. August 24, 2026 — Operation Economic Outcast | 20 |
| II. Five Iranian Economic Sectors Designated for Expanded Secondary-Sanctions Exposure | 20 |
| III. August 24, 2026 — Nearly 60 Iran-Linked Designations | 21 |
| IV. August 24, 2026 — Secondary-Sanctions Principle | 21 |
| V. August 26, 2026 — OFAC Continued Iran-Related Enforcement | 22 |
| VI. August 28, 2026 — Banque Misr UAE / Iranian Financial Access | 22 |
| VII. August 28, 2026 — OFAC Secondary-Sanctions Designation | 22 |
| VIII. August 2026 OFAC Enforcement Timeline | 22–23 |
| H. These Authorities as Evidence of United States National-Security Policy and Legal Framework | 23 |
| I. Application to Defendant Tô Lâm / Vietnamese Government | 24 |
| **EXHIBIT LIST** | **25–26** |
| Exhibit 1 — June 12, 2026 Vietnamese Consulate Visa Revocation Notice | 25 |
| Exhibit 2 — Translation of Exhibit 1 | 25 |
| Exhibit 3 — FedEx/Delivery Evidence | 25 |
| Exhibit 4 — Police Report Concerning Threats | 25 |
| Exhibit 5 — FBI Submission/Complaint Confirmation | 25 |
| Exhibit 6 — Declaration of Witness/Investigator | 25 |
| Exhibit 7 — June 2026 Continuing-Threats Communications | 25 |
| Exhibit 8 — Vietnamese Government/Intelligence Evidence Connections with Iran and Its Proxy | 25–26 |
| **[PROPOSED] ORDER** | **29–30** |

# PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SANCTIONS, PROTECTIVE RELIEF, EVIDENCE PRESERVATION, AND REFERRAL OF FOREIGN-RETALIATION AND SANCTIONS-RELATED CONDUCT

## I. INTRODUCTION

Plaintiff John Doe respectfully moves for sanctions and protective relief based upon a continuing course of conduct that Plaintiff alleges constitutes retaliation, intimidation, interference with this judicial proceeding, and conduct directed at Plaintiff because he sought relief in this Court.

The evidence presently available includes, among other things:

1. the Vietnamese Government's revocation of Plaintiff's Vietnamese visa ;
2. the written notification from the Vietnamese Consulate in New York dated **June 12, 2026**;
3. the stated basis for that action, which Plaintiff understands to have originated from Vietnam's immigration/security authorities;
4. threats communicated to Plaintiff concerning his safety, **including threats that he,his family , his US Military law associates could "disappear" even while in the United States;**
5. Plaintiff's reports to local law enforcement and the FBI concerning those threats;
6. documentary evidence concerning communications and activities involving Vietnamese governmental representatives;
7. evidence Plaintiff contends shows continued Vietnamese governmental intelligence, diplomatic, commercial, or other cooperation with Iranian governmental or Iranian-linked interests;
8. evidence concerning the involvement of persons whom Plaintiff alleges acted for, advised, or coordinated with Vietnamese governmental interests;
9. evidence concerning the alleged use of foreign-government influence to affect Plaintiff's rights and litigation;
10. the existing record concerning service of process, defaults, and Defendants' failure to respond as required.

Plaintiff does **not** ask this Court to determine, merely from allegations, that every person identified in Plaintiff's evidence is a foreign agent or that every transaction involving Vietnam and Iran violates United States sanctions law. Instead, Plaintiff requests that the Court consider the evidence for the limited and proper purposes of determining whether Defendants or persons acting in concert with them have engaged in **bad-faith retaliation, intimidation, obstruction, harassment, interference with the judicial process, or other sanctionable conduct**, and whether referral to the appropriate federal agencies is warranted.

The Supreme Court has recognized that federal courts possess inherent authority to protect the integrity of their proceedings and sanction bad-faith litigation conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46, 50–51 (1991).

---

# II. FACTUAL BASIS FOR SANCTIONS

## A. Vietnam's Revocation of Plaintiff's Visa

On or about **June 12, 2026**, the Consulate of the Socialist Republic of Vietnam in New York issued a written notice concerning Plaintiff's Vietnamese visa .

The document identifies the **Vietnamese Ministry of Public Security ( as role similarly like IRGC of Iran Islamic Republic ,control all of Communist Party and social society )** as the source of the underlying decision and states that the visa exemption was revoked for reasons characterized as relating to **national security ground.**

Plaintiff submits the document not merely as evidence concerning immigration status, but as evidence of a potentially coordinated governmental response occurring while Plaintiff's federal litigation against Vietnamese governmental defendants remains pending.

The Court should therefore consider:

> **Whether the timing, governmental source, stated security justification, and surrounding circumstances demonstrate retaliatory conduct directed at Plaintiff because he commenced and pursued this federal action.**

Plaintiff requests discovery and preservation of the underlying records sufficient to determine who initiated, requested, recommended, approved, or transmitted the revocation.

---

# III. THE REVOCATION SHOULD BE CONSIDERED TOGETHER WITH THE THREATS AGAINST PLAINTIFF

The visa revocation does not stand alone.

Plaintiff has separately reported threats to his safety, including **statements that he could be made to "disappear" even while located** in the United States.

Plaintiff has reported those threats to law enforcement, including local police and the FBI.

Plaintiff therefore requests that the Court consider the following evidence cumulatively:

**Government action + security designation + visa revocation + threats against Plaintiff + pending litigation + foreign-government defendants + alleged governmental/intelligence relationships.**

Plaintiff submits that the combination warrants judicial scrutiny even if any individual item, standing alone, might have an innocent explanation.

The Court need not make a final criminal finding to order preservation of evidence or to protect the integrity of its proceedings.

---

# IV. RETALIATION AGAINST A LITIGANT MAY WARRANT JUDICIAL PROTECTION

Federal courts possess inherent authority to control proceedings and protect the judicial process from abuse.

In *Chambers v. NASCO*, the Supreme Court held that a federal court possesses inherent authority to sanction bad-faith conduct that abuses the judicial process, including conduct that is vexatious, oppressive, or undertaken in bad faith. 501 U.S. at 43–46.

The Court explained that the inherent power exists because federal courts must be capable of managing their proceedings and protecting the integrity of the judicial system.

Plaintiff therefore requests sanctions **to the extent the Court finds that the challenged conduct was undertaken to interfere with this litigation or Plaintiff's access to judicial relief.**

---

# V. THE COURT SHOULD NOT PERMIT FOREIGN GOVERNMENTAL PRESSURE TO SUBSTITUTE FOR A JUDICIAL RESPONSE

Plaintiff is entitled to pursue judicial relief through the procedures established by federal law.

A foreign government's disagreement with Plaintiff's claims does not itself establish misconduct by the foreign government. **However, if the evidence establishes that governmental officials or persons acting for them attempted to intimidate Plaintiff, threaten Plaintiff, retaliate against Plaintiff, interfere with evidence, or otherwise obstruct Plaintiff's access to the Court, those activities are materially different**.

The distinction is important:

> **Plaintiff does not ask the Court to sanction Vietnam merely because Vietnam disagrees with Plaintiff. Plaintiff asks the Court to sanction conduct that the evidence establishes was intended to interfere with Plaintiff's participation in this judicial proceeding.**

---

# VI. THE IRAN-RELATED EVIDENCE SHOULD BE PRESENTED AS EVIDENCE OF POSSIBLE SANCTIONS-RELATED CONDUCT, NOT AS A CONCLUSIVE FINDING

Plaintiff further submits evidence concerning alleged Vietnamese governmental cooperation with Iranian governmental or Iranian-linked interests.

Plaintiff alleges that Defendant **Tô Lâm** and Vietnamese governmental entities maintained intelligence, governmental, diplomatic, commercial, or other relationships involving Iranian interests.

The Court should distinguish between:

1. lawful diplomatic relations;
2. ordinary commercial transactions;
3. conduct involving a designated person or blocked entity;
4. sanctions evasion;
5. material support or facilitation of prohibited Iranian activity; and
6. conduct actually prohibited under a particular OFAC authority.

The existence of a relationship with Iran does **not automatically establish a sanctions violation**.

However, if evidence establishes transactions or assistance involving persons or entities designated under applicable U.S. sanctions authorities, that evidence may warrant referral to the Department of the Treasury, OFAC, DOJ, or another appropriate federal authority.

OFAC confirms that the Iran sanctions program is implemented through multiple statutes, executive orders, regulations, and related authorities.

OFAC's current Iran program includes Executive Orders including **E.O. 13902**, **E.O. 13876**, **E.O. 13871**, and other authorities.

The Department of the Treasury has also continued to impose sanctions against foreign individuals and entities supporting Iranian military and weapons-procurement networks. For example, Treasury's June 10, 2026 action targeted foreign persons and entities supporting procurement for Iran's IRGC and Ministry of Defense and Armed Forces Logistics.

Accordingly, Plaintiff requests **investigation/referral**, rather than asking this Court to make an administrative OFAC designation itself.

---

# VII. REQUEST FOR REFERRAL TO THE APPROPRIATE FEDERAL AUTHORITIES

Plaintiff respectfully requests that the Court, if it finds the evidence sufficiently credible, consider referring the relevant evidence to:

- United States Department of Justice;
- Federal Bureau of Investigation;
- Department of the Treasury;
- Office of Foreign Assets Control;
- Department of State; and
- any other appropriate federal investigative authority.

Such referral would allow the Executive Branch to determine whether any federal criminal, foreign-agent, sanctions, national-security, or immigration laws have been violated.

Plaintiff does **not** ask the Court to usurp those agencies' statutory authority.

---

# VIII. FARA EVIDENCE SHOULD BE REFERRED FOR INVESTIGATION, NOT TREATED AS A CONCLUSIVE VIOLATION

Plaintiff also raises evidence concerning individuals whom Plaintiff believes may have acted on behalf of foreign principals.

FARA, 22 U.S.C. § 611 et seq., requires certain persons acting as agents of foreign principals in covered activities to register with the Department of Justice unless an exemption applies. DOJ explains that FARA is administered by the National Security Division's FARA Registration Unit.

**DOJ further explains that registration generally must occur before acting as an agent of a foreign principal and that § 612(a) provides a ten-day registration period after agreement to act as an agent.**

However, Plaintiff recognizes that **legal representation of a foreign principal in judicial proceedings may implicate a statutory exemption**. DOJ specifically recognizes a legal-representation exemption under FARA for qualified attorneys representing a disclosed foreign principal before a U.S. court or agency, subject to the statutory requirements.

Therefore, Plaintiff does not ask this Court simply to declare that an attorney violated FARA.

Instead, Plaintiff requests:

> **that the Court preserve the evidence and, where appropriate, refer the underlying facts to DOJ's FARA Unit for determination.**

This is particularly appropriate where the alleged activities extend beyond ordinary legal representation and allegedly include political activity, governmental coordination, or other activities undertaken on behalf of a foreign principal.

---

# IX. SANCTIONS SHOULD BE TAILORED TO THE COURT'S AUTHORITY

Plaintiff respectfully requests the Court consider the following remedies:

### A. Litigation sanctions

Award appropriate monetary sanctions, fees, costs, or other litigation-related relief resulting from sanctionable conduct.

### B. Protective order

Enter appropriate protective relief preventing further intimidation, harassment, retaliation, or interference with Plaintiff's participation in this litigation.

### C. Evidence preservation

Order preservation of:

- communications;
- emails;
- text messages;
- diplomatic communications;
- immigration records;
- visa-revocation records;
- intelligence/security referral records;
- communications with counsel;
- communications with U.S.-based representatives;
- communications concerning Plaintiff;
- records concerning the initiation of the visa revocation; and
- records concerning alleged communications with Iranian governmental or Iranian-linked entities.

### D. Discovery

Permit narrowly tailored discovery concerning the persons who initiated, requested, approved, communicated, or implemented the challenged conduct.

### E. Referral

Refer appropriate evidence to DOJ, FBI, OFAC, State Department, and/or other competent federal agencies.

### F. Other appropriate relief

Grant such other relief as is necessary to protect the integrity of the Court's proceedings.

---

# X. THE COURT SHOULD NOT DIRECTLY IMPOSE EXECUTIVE-BRANCH VISA OR OFAC SANCTIONS

Plaintiff recognizes an important jurisdictional limitation.

The Court should not be asked to act as the Department of State, Department of Homeland Security, Treasury Department, or OFAC.

Accordingly, Plaintiff's requested relief should be framed as:

> **"referral and recommendation for appropriate Executive Branch review and action,"**

rather than an order requiring an agency to issue a visa ban or OFAC designation.

This distinction strengthens the motion because it keeps the requested judicial relief within the Court's recognized authority while preserving Plaintiff's request for appropriate federal investigation.

---

# XI. ARGUMENT

## A. The Court Possesses Inherent Authority To Sanction Bad-Faith Abuse of Its Judicial Process

*Chambers* establishes the central authority.

The Supreme Court held that federal courts possess inherent power to manage proceedings and sanction bad-faith conduct that abuses the judicial process. 501 U.S. at 43–46.

The power may extend to appropriate attorney's fees and other sanctions when necessary to protect the judicial process.

The Court must exercise that authority with restraint and discretion, but the existence of that limitation does not eliminate the power itself.

---

## B. The Evidence Warrants Preservation and Judicial Investigation

Plaintiff is not presently asking the Court to resolve every factual dispute surrounding the alleged Vietnamese governmental conduct.

Instead, the evidence presents a sufficient basis for:

1. preservation;
2. limited discovery;
3. protection of Plaintiff;
4. investigation;
5. referral; and
6. sanctions if the Court finds bad faith.

The visa-revocation document is particularly significant because it identifies a governmental security basis for the action and occurred while Plaintiff's litigation was pending.

---

## C. Retaliatory Conduct Directed at a Federal Litigant Is Material to the Court's Management of the Case

If Defendants or persons acting on their behalf attempted to frighten Plaintiff into abandoning this action, interfered with his ability to litigate, or threatened Plaintiff because of his federal claims, such conduct would directly affect the administration of justice.

The Court therefore has a legitimate interest in determining whether the conduct was connected to this litigation.

---

## D. <u>Iran-Related Evidence Supports</u> Referral Where It Shows Possible Prohibited Transactions or Sanctions Evasion

The current OFAC framework demonstrates that the United States continues to impose sanctions on foreign persons and networks supporting Iranian military and weapons activities.

But Plaintiff respectfully asks the Court to avoid making an unsupported conclusion that every Vietnam-Iran relationship violates sanctions.

The appropriate judicial question is narrower:

> <u>**Does the evidence warrant preservation, discovery, and referral concerning whether specific persons, entities, transactions, or activities fall within an applicable U.S. sanctions prohibition?**</u>

Plaintiff submits that it does.

---

# XII. REQUEST FOR RELIEF

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. **GRANT** Plaintiff's Motion for Sanctions;
2. find, after appropriate proceedings, whether Defendants or persons acting in concert with them engaged in bad-faith retaliation, intimidation, harassment, obstruction, or interference with Plaintiff's access to the Court;
3. impose appropriate litigation sanctions if such conduct is established;
4. enter appropriate protective relief;
5. order preservation of records relating to Plaintiff's visa revocation and related governmental communications;
6. authorize narrowly tailored discovery concerning the origin and implementation of the visa revocation and alleged retaliatory conduct;
7. permit Plaintiff to submit the relevant evidence to the DOJ, FBI, Treasury/OFAC, State Department, and other competent authorities;
8. refer appropriate evidence to those agencies for independent determination of possible FARA, sanctions, national-security, or other federal-law violations;
9. consider the Iran-related evidence insofar as it bears on Defendants' conduct, credibility, potential sanctions-related activity, or the need for federal investigation;
10. grant such other relief as the Court determines just and proper.

Respectfully submitted,

**JOHN DOE**
Plaintiff

---

# DECLARATION OF JOHN DOE

I, **John Doe**, declare as follows:

1. I am the Plaintiff in this action.
2. I submit this Declaration in support of my Motion for Sanctions and related protective relief.
3. I have intentionally proceeded under the pseudonym **John Doe** because disclosure of my identifying information presents legitimate safety and privacy concerns.
4. During the pendency of this litigation, I received a written notification from the Consulate of the Socialist Republic of Vietnam in New York concerning revocation of my Vietnamese visa .
5. The notice is dated **June 12, 2026**.
6. The notice states that the revocation was based upon a communication from Vietnamese immigration/security authorities and refers to reasons involving national security, public order, and social safety.
7. I understand the revocation to have occurred while this federal action was pending.
8. I have also received threats concerning my safety.
9. Among the threats communicated to me was a threat that **I and My family , My Military law Associates could "disappear,"** including while we was in the United States.
10. I reported the threats to law enforcement, including local police and the FBI.
11. I maintain documentation concerning those reports.
12. I submit those records because I believe they are relevant to whether the visa revocation and other governmental actions were retaliatory or intended to intimidate me because of this litigation.
13. I further possess evidence concerning communications involving Vietnamese governmental representatives and other persons whom I believe may have governmental or foreign-agent relationships.
14. I respectfully request that the Court permit appropriate discovery rather than requiring me to prove matters that are uniquely within the possession of foreign governments or third parties.
15. I further submit evidence concerning Vietnamese governmental relationships with Iranian governmental or Iranian-linked interests.
16. I understand that the existence of diplomatic or commercial relations with Iran does not, by itself, establish a violation of United States sanctions law.
17. **My request is that the appropriate federal agencies investigate whether particular individuals, entities, transactions, or activities violate applicable U.S. sanctions authorities.**
18. I also request preservation of records concerning the origin, authorization, transmission, and implementation of the visa revocation.
19. I respectfully believe that the combination of the governmental action, threats, timing, and surrounding circumstances warrants judicial protection and investigation.
20. I submit this Declaration in good faith and for the purpose of protecting the integrity of these proceedings.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on August 28 , 2026.

**JOHN DOE**
Plaintiff

---

# AUTHORITIES

### 1. *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)

Primary authority for the Court's inherent authority to sanction bad-faith abuse of the judicial process.

### 2. Federal Rule of Civil Procedure 11

Authority concerning representations made to the Court and sanctions for papers presented for improper purposes or without adequate factual/legal support.

### 3. Federal Rule of Civil Procedure 37

Applicable where discovery obligations, preservation duties, or discovery orders are violated.

### 4. 28 U.S.C. § 1927

Potential authority concerning attorneys who unreasonably and vexatiously multiply proceedings.

### 5. 28 U.S.C. § 1651 — All Writs Act

Provides federal courts authority to issue appropriate writs in aid of their respective jurisdictions.

### 6. 22 U.S.C. § 611 et seq. — FARA

Provides the statutory framework concerning agents of foreign principals. DOJ confirms that FARA requires covered agents of foreign principals to register unless an exemption applies.

### 7. 22 U.S.C. § 612

Provides the registration requirement and timing under FARA. DOJ states that registration generally must occur before acting as an agent of a foreign principal.

### 8. 28 C.F.R. Part 5

DOJ regulations implementing FARA.

### 9. Iran Sanctions Authorities

The current OFAC Iran program incorporates multiple statutes, executive orders, regulations, and determinations.

Relevant authorities identified by OFAC include:

- Executive Order 13876;
- Executive Order 13902;
- Executive Order 13949;

- Executive Order 13871;
- applicable statutory authorities;
- applicable OFAC regulations and determinations.

OFAC's current sanctions activity confirms continuing enforcement against foreign networks supporting Iran's military and weapons programs

# PRESIDENTIAL EXECUTIVE ORDERS AND FEDERAL SANCTIONS AUTHORITIES CONCERNING IRAN

## A. Executive Order 13871 — May 8, 2019

On **May 8, 2019**, President Donald J. Trump signed **Executive Order 13871, "Imposing Sanctions With Respect to the Iron, Steel, Aluminum, and Copper Sectors of Iran."** The Order was published at **84 Fed. Reg. 20,761 (May 10, 2019)**.

The Order was issued pursuant to, among other authorities:

- the **International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 et seq.;**
- the **National Emergencies Act, 50 U.S.C. §§ 1601 et seq.;**
- **8 U.S.C. § 1182(f);** and
- **3 U.S.C. § 301.**

The Order addressed the Iranian Government's ability to generate revenue from specified sectors and authorized blocking sanctions against persons engaged in specified transactions involving Iran's iron, steel, aluminum, and copper sectors.

OFAC subsequently implemented portions of E.O. 13871 through regulations including **31 C.F.R. parts 561 and 562**. OFAC specifically identifies E.O. 13871 as part of the legal framework for Iran sanctions.

**Proposed citation:**
*Exec. Order No. 13,871, 84 Fed. Reg. 20,761 (May 10, 2019).*

---

## B. Executive Order 13876 — June 24, 2019

On **June 24, 2019**, President Trump signed **Executive Order 13876, "Imposing Sanctions With Respect to Iran."**

The Order expressly invoked:

> International Emergency Economic Powers Act, 50 U.S.C. § 1701 et seq.; National Emergencies Act, 50 U.S.C. § 1601 et seq.; § 212(f) of the Immigration and Nationality Act, 8 U.S.C. § 1182(f); and § 301 of Title 3.

The **Order found that the actions of the Government of Iran and Iranian-backed proxies constituted circumstances warranting additional sanctions and provided for blocking property and interests in property of specified Iranian persons**, including the Supreme Leader's Office and

persons determined by the Secretary of the Treasury pursuant to the Order.

OFAC continues to identify **E.O. 13876** as an Iran sanctions authority and uses the designation tag **IRAN-EO13876** for sanctions arising under that authority.

**Proposed citation:**
*Exec. Order No. 13,876 (June 24, 2019).*

---

## C. Executive Order 13902 — January 10, 2020

On **January 10, 2020**, President Trump signed **Executive Order 13902, "Imposing Sanctions With Respect to Additional Sectors of Iran."** It was subsequently published at **85 Fed. Reg. 2,003 (Jan. 14, 2020).**

E.O. 13902 expanded the sanctions framework to persons determined to operate in specified sectors of the Iranian economy, including:

1. construction;
2. mining;
3. manufacturing;
4. textiles; and
5. additional sectors subsequently identified by the Secretary of the Treasury in consultation with the Secretary of State.

OFAC explains that the financial sector was subsequently identified for sanctions under E.O. 13902 on **October 8, 2020**.

OFAC further explains that E.O. 13902 operates within the broader Iran sanctions framework and that persons operating in identified Iranian sectors may become subject to sanctions.

**Proposed citation:**
*Exec. Order No. 13,902 (Jan. 10, 2020), 85 Fed. Reg. 2,003 (Jan. 14, 2020).*

---

## D. Executive Order 13949 — September 21, 2020

On **September 21, 2020**, President Trump signed **Executive Order 13949, "Blocking Property of Certain Persons With Respect to the Conventional Arms Activities of Iran."** It was published at **85 Fed. Reg. 60,043 (Sept. 23, 2020).**

The Order was issued pursuant to, among other authorities, the **Countering America's Adversaries Through Sanctions Act ("CAATSA"), Pub. L. 115-44**, and **IEEPA, 50 U.S.C. §§ 1701 et seq.**

The Order addressed persons involved in specified conventional-arms activities involving Iran and provided sanctions authorities relating to property and interests in property of persons covered by the Order.

OFAC identifies E.O. 13949 as **"IRAN-CON-ARMS-EO"** in its sanctions-list program classifications.

**Proposed citation:**
*Exec. Order No. 13,949 (Sept. 21, 2020), 85 Fed. Reg. 60,043 (Sept. 23, 2020).*

## E. IEEPA — 50 U.S.C. §§ 1701–1706

The principal statutory foundation for these Presidential Iran sanctions is the **International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701–1706**.

Section 1701 permits the President, after declaring a national emergency concerning an unusual and extraordinary threat to the United States, to exercise authorities provided by IEEPA. Section 1702 provides authority to investigate, regulate, block, prohibit, or otherwise control specified transactions and property interests involving foreign countries and nationals.

Section 1705 provides civil and criminal penalties for violations of IEEPA and orders, regulations, or prohibitions issued under it. OFAC regulations likewise recognize that violations, attempts, conspiracies, and aiding or abetting violations can result in penalties where the applicable sanctions regime so provides.

**Proposed citation:**
*50 U.S.C. §§ 1701–1706.*

---

## F. National Emergencies Act — 50 U.S.C. §§ 1601–1651

The Iran sanctions Executive Orders were issued in connection with the national emergency concerning Iran originally declared by **Executive Order 12957 on March 15, 1995**.

The Federal Register confirms that the national emergency has been repeatedly continued and that E.O. 13871, E.O. 13876, E.O. 13902, and E.O. 13949 form part of the continuing Iran sanctions framework.

The current Federal Register notice also confirms that the national emergency concerning Iran remained in effect beyond March 15, 2026.

**Proposed citation:**
*50 U.S.C. §§ 1601–1651.*

---

# G. OFAC Regulations

OFAC identifies the principal Iran sanctions regulations as including:

- **31 C.F.R. Part 560 — Iranian Transactions and Sanctions Regulations ("ITSR");**
- **31 C.F.R. Part 561 — Iranian Financial Sanctions Regulations;**
- **31 C.F.R. Part 562 — Iranian Human Rights Abuses Sanctions Regulations;** and
- **31 C.F.R. Part 535 — Iranian Assets Control Regulations.**

OFAC's current Iran sanctions page identifies these regulations as part of the legal framework implementing Iran-related sanctions.

The ITSR, in particular, provides the regulatory framework governing transactions involving Iran,

subject to applicable exemptions and general or specific licenses.

## I. August 24, 2026 — Operation Economic Outcast

On **August 24, 2026**, the Trump Administration announced **Operation Economic Outcast**, described by the White House as a campaign intended to sever the remaining economic lifelines sustaining the Iranian regime.

The Department of the Treasury stated that, at President Trump's direction, Treasury had commenced the operation as a **"whole-of-government, economic campaign"** against Iran and its enablers. Treasury stated that its objective was to target Iran's financial connections globally and that countries would be given timelines to terminate identified Iran-related activity, with Treasury warning that it would act against those that failed to do so.

Treasury Department expressly stated that:

1. **foreign countries and entities facilitating Iranian activity are within the scope of the campaign;**
2. entities facilitating **money laundering or sanctions evasion** for Iran risk losing access to the U.S. financial system;
3. Treasury was expanding categories of Iran-related conduct potentially subject to **secondary sanctions**;
4. Treasury was targeting Iranian economic connections extending beyond Iran itself; and
5. enforcement would accelerate.

## II. Five Iranian Economic Sectors Designated for Expanded Secondary-Sanctions Exposure

On August 24, Treasury announced determinations covering five sectors of the Iranian economy:

- **digital assets;**
- **technology;**
- **gold;**
- **aviation; and
- **shipping.**

The Federal Register subsequently published the OFAC determination under **Executive Order 13902**, stating that § 1(a)(i) of E.O. 13902 would apply to those five sectors and that persons determined to operate in those sectors would be subject to sanctions pursuant to the Order. The determination became effective **August 24, 2026**.

# III. August 24, 2026 — Nearly 60 Iran-Linked Designations

On August 24, OFAC sanctioned **nearly 60 individuals, entities, and vessels** located across multiple jurisdictions.

Treasury stated that these targets were involved in networks connected to:

- Iranian nuclear procurement;
- missile-technology procurement;
- cyber operations;
- oil-revenue generation; and
- other activities supporting the Iranian regime.

Treasury identified the authorities used for those designations as including:

- **Executive Order 13382** — weapons of mass destruction proliferators;
- **Executive Order 13694**, as amended — malicious cyber-enabled activities;
- **Executive Order 13902** — specified Iranian economic sectors; and
- **Executive Order 13224**, as amended — counterterrorism authority.

This is important because it demonstrates that the August 2026 enforcement campaign was **not limited to Iranian governmental property located inside Iran**. OFAC targeted networks, intermediaries, vessels and entities operating across multiple jurisdictions.

---

# IV. August 24, 2026 — Secondary-Sanctions Principle

The Secretary of the Treasury separately stated that the campaign was directed against Iran's **"financial connections around the globe"** and its enablers.

> **The August 2026 sanctions campaign demonstrates that the United States Government does not view Iranian-related sanctions exposure as confined geographically to Iran. The Executive Branch has expressly directed enforcement against foreign intermediaries, financial facilitators, procurement networks, shipping interests, and other persons or entities that sustain or facilitate Iran-related activity.**

---

# V. August 26, 2026 — OFAC Continued Iran-Related Enforcement

OFAC's official Recent Actions record shows another Iran-related sanctions action on **August 26, 2026**, together with updates to Iran-related general licenses.

---

# VI. August 28, 2026 — Banque Misr UAE / Iranian Financial Access

Treasury's Financial Crimes Enforcement Network proposed a rule that would restrict **Banque Misr UAE's correspondent banking access to U.S. financial institutions**, based on alleged processing of substantial transactions connected to the Iranian regime.

On the same date, OFAC:

- designated **Reza Mohammad Taeedi**, identified as manager of Bank Melli's Dubai branch;
- designated **Pedram Pirouzan Exchange House / Opal Exchange**;
- designated **Kameng Trading Limited**; and
- applied **E.O. 13902** to Kameng Trading Limited because of its operation in the Iranian financial sector.

This is a particularly useful example because the conduct involved **foreign jurisdictions and financial intermediaries**, rather than simply an Iranian governmental entity located in Iran.

---

# VII. August 28, 2026 — OFAC Secondary-Sanctions Designation

OFAC's August 28 designation expressly identifies Reza Mohammad Taeedi as **subject to secondary sanctions** and identifies the relationship to **Bank Melli Iran**.

---

# VIII. August 2026 OFAC Enforcement Timeline

| Date | U.S. Government Action | Legal Significance |
|---|---|---|
| **Aug. 12, 2026** | OFAC Iran-related and counter-terrorism designations | Continuing sanctions enforcement |
| **Aug. 20, 2026** | OFAC additional sanctions activity | Continued pressure on Iran-linked networks |
| **Aug. 24, 2026** | **Operation Economic Outcast announced** | Whole-of-government economic campaign |
| **Aug. 24, 2026** | Nearly 60 Iran-linked persons/entities/vessels designated | Nuclear, missile, cyber and oil networks targeted |
| **Aug. 24, 2026** | Five additional sectors identified under E.O. 13902 | Digital assets, technology, gold, aviation and shipping |
| **Aug. 26, 2026** | OFAC additional Iran-related designations and license updates | Continuing implementation |
| **Aug. 27, 2026** | Federal Register publication of E.O. 13902 determination | Formal regulatory publication |
| **Aug. 28, 2026** | OFAC designation involving Bank Melli-linked actors | Secondary-sanctions example |
| **Aug. 28, 2026** | FinCEN proposed restriction concerning Banque Misr UAE | U.S. correspondent-financial-system pressure |

---

# H. These authorities as evidence of the United States' established national-security policy and legal framework concerning Iranian state activity, Iranian-backed activities, sanctions evasion, and material support for sanctioned Iranian sectors and actors.

**Plaintiff does not contend that these Executive Orders independently confer upon this Court the Executive Branch's sanctions-enforcement authority. Rather, Plaintiff submits these authorities as evidence of the United States' established national-security policy and legal framework concerning Iranian state activity, Iranian-backed activities, sanctions evasion, and material support for sanctioned Iranian sectors and actors. Where the evidence before the Court establishes that a Defendant knowingly participated in conduct materially connected to such activities, the Court may consider that evidence in determining whether sanctions, protective relief, referral to**

> **the appropriate Executive Branch agencies, or other relief authorized by law is warranted.**

In fact , **OFAC—not the federal district court—normally administers and enforces the IEEPA sanctions program.** The Court should not be asked to substitute itself for OFAC.

---

# I. Application to Defendant To Lam / Vietnamese Government

For the allegations concerning **To Lam, the Government of Vietnam, Vietnamese intelligence officials, or other Defendants**,

> **Plaintiff further alleges that Defendant To Lam and associated Vietnamese governmental actors maintained or facilitated intelligence, governmental, commercial, or other relationships with Iranian governmental or Iranian-linked actors. Plaintiff submits the evidence concerning those relationships for the Court's consideration in determining the nature, purpose, and extent of Defendants' conduct and whether the matter should be referred to the appropriate federal authorities for investigation or sanctions review.**

Plaintiff can attach the actual evidence showing the alleged relationship.

That distinction is important because **E.O. 13949 concerns conventional-arms activities involving Iran**, E.O. 13902 concerns specified Iranian economic sectors, E.O. 13871 concerns specified Iranian metals sectors, and E.O. 13876 concerns specified Iranian governmental persons.

Also, Plaintiff further requests that the Court consider the evidence concerning Defendant To Lam and associated Vietnamese governmental actors in light of the United States' August 2026 sanctions-enforcement framework. Plaintiff does not ask this Court to exercise the Treasury Department's independent OFAC designation authority. Rather, Plaintiff requests that the Court consider the evidence for purposes authorized by the Federal Rules, the Court's inherent authority, discovery and preservation of evidence, sanctions for litigation misconduct where applicable, and referral to the appropriate federal authorities where the evidence warrants such referral.

# EXHIBIT LIST

### Exhibit 1( File under SEAL)

**June 12, 2026 Vietnamese Consulate in New York Visa Revocation Notice**

### Exhibit 2(under SEAL)

**Translation of Exhibit 1**

Attach the English translation and identify the translator/certification method.

### Exhibit 3( Under SEAL)

**FedEx/Delivery Evidence**

Include the FedEx record showing the relevant delivery history and tracking information.

### Exhibit 4(Under SEAL)

**Police Report Concerning Threats**

Include the local police report documenting the alleged threat.

### Exhibit 5

**FBI Submission/Complaint Confirmation**

Include confirmation of the report, but redact sensitive investigative information where necessary.

### Exhibit 6( Under SEAL)

**Declaration of Witness /Investigator**

The witness declaration concerning threats and/or relevant communications.

### Exhibit 7( under SEAL)

**June 2026 Continuing-Threats Communications**

Texts, emails, messages, recordings, or other documentary evidence.

### Exhibit 8

**Vietnamese Government / Intelligence Evidence Connections with IRAN and its Proxy .**

Documents supporting, rather than merely asserting, the alleged involvement of Vietnamese governmental or intelligence officials.

Name : John Doe
c/o AFLC -Civil Recovery Division .
10 Brookley Ave. #8329 ,
Bolling Air Force Base
US Department of Defense
Washington DC 20032.
Phone /Fax :(614)343-6510.
Email:
info@airforcelawcenter.org

**US DISTRICT COURT**
**DISTRICT OF COLUMBIA DISTRICT COURT**

John Doe , on behalf of himself in his individual capacity, his U.S. Military and U.S. Government duties, and the interests of the United States Government/Military,

Plaintiff

vs.

SOCIALIST REPUBLIC of VIET NAM

ISLAMIC REPUBLIC OF IRAN

TO LAM (MINISTER OF MINISTRY of PUBLIC SECURITY )

NGUYEN VAN NHIEM ( AGENT OF SOCIALIST REPUBLIC OF VIETNAM).
NGUYEN VAN TRUC (A US CITIZEN -AN AGENT OF SOCIALIST REPUBLIC OF VIETNAM ).
DANG XUAN HONG ( AN AGENT OF SOCIALIST REPUBLIC OF VIETNAM ).
LE HONG NAM ( HEAD OF HO CHI MINH CITY PUBLIC SECURITY DEPARTMENT).
LE QUANG DAO (INTELLIGENCE HEAD OF HO CHI MINH CITY PUBLIC SECURITY DEPARTMENT).
NGUYEN QUANG THONG ( AN AGENT OF DISTRICT 11 POLICE - HO CHI MINH CITY )
NGO QUANG THE (CHIEF OF WARD 05

Case : 1:25-cv-03226-CJN.
PROSPOSED ORDER FOR :

# PLAINTIFF'S MOTION FOR SANCTIONS, PROTECTIVE RELIEF, EVIDENCE PRESERVATION, AND REFERRAL OF FOREIGN-RETALIATION AND SANCTIONS-RELATED CONDUCT

# FOR :

**COMPLAINT FOR DAMAGES** :

**1/REMEDIES UNDER TORTURE VICTIM PROTECTION ACT .**
2/REMEDIES UNDER **28 U.S.C. § 1605B** .
**Justice For United States Victims Of State Sponsored Terrorism.**
3/REMEDIES UNDER RELATED FEDERAL CAUSES OF ACTIONS .

Request For JURY TRIAL .
Most Remedies will be donated to American Disabled Veterans /Military Gold Star Family Fund -US Department of Defense /Department of Veterans Affairs .

DISTRICT 11 POLICE -HO CHI MINH CITY )
THAN TRONG BINH ( VICE CHIEF OF WARD 05 DISTRICT 11 POLICE -HO CHI MINH CITY ).
LUU TAN LOI ( UNDERCOVER OF HO CHI MINH CITY POLICE DEPARTMENT)
VU MANH CUONG ( IMMIGRATION POLICE, HO CHI MINH CITY ).
LY HOAI SON ( AGENT OF WARD 05 DISTRICT 11 HO CHI MINH CITY POLICE ).

LE HOANG BAO ( DISTRICT 07 POLICE HO CHI MINH CITY )
LE MINH HAI ( CYBER SECURITY DEPARTMENT OF HO CHI MINH CITY )
NGUYEN VAN HA ( CYBER SECURITY DEPARTMENT OF HO CHI MINH CITY )
DO HOANG VIET ( UNDERCOVER AGENT )
VU THE SON ( UNDERCOVER AGENT )
NGUYEN TUAN ANH ( UNDERCOVER AGENT )
LE VAN TU ( UNDERCOVER AGENT )
NGUYEN NGOC SON ( COLONEL -UNDERCOVER AGENT ).
MOHAMED MANASTRA ( AGENT, ISLAMIC REVOLUTIONARY GUARD CORPS/HEZBOLLAH);
ATIR MANASTRA ( AGENT, ISLAMIC REVOLUTIONARY GUARD CORPS/HEZBOLLAH);

Does 1-100

Defendants.

# [PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR SANCTIONS, PROTECTIVE RELIEF, PRESERVATION OF EVIDENCE, JUDICIAL NOTICE, LIMITED DISCOVERY, AND REFERRAL TO APPROPRIATE FEDERAL AUTHORITIES

Upon consideration of Plaintiff John Doe's Motion, Memorandum of Points and Authorities, Declaration, exhibits, the record in this action, and any opposition thereto, it is hereby:

### ORDERED:

**1.** Plaintiff's Motion is **GRANTED** to the extent provided below.

**2.** The Court finds that the evidence submitted by Plaintiff warrants preservation of potentially relevant evidence concerning the alleged retaliation, threats, visa revocation, governmental communications, witness-related communications, and other conduct identified in Plaintiff's Motion.

**3.** The parties **shall preserve, to the extent within their possession, custody, or control and subject to applicable law, potentially relevant documents and electronically stored information concerning:**

a. Plaintiff;
b. the June 12, 2026 visa-revocation notice;
c. communications concerning Plaintiff's litigation;
d. communications concerning Plaintiff's witnesses or investigators;
e. communications concerning the alleged threats; and
f. other matters specifically identified in Plaintiff's Motion.

**4.** No party shall knowingly destroy, alter, conceal, or materially modify relevant evidence subject to a preservation obligation.

**5.** Plaintiff may conduct **narrowly tailored discovery**, subject to the Federal Rules of Civil Procedure and any further protective order, concerning the origin, authorization, transmission, and implementation of the June 12, 2026 visa-revocation decision and communications directly relevant to Plaintiff's allegations of retaliation or interference.

**6.** Any discovery directed to foreign governmental entities shall comply with all applicable jurisdictional, sovereign-immunity, discovery, and procedural requirements. Nothing in this Order shall be construed as compelling an entity beyond the Court's lawful jurisdiction.

**7.** Plaintiff's request for judicial notice is **GRANTED** , limited to facts appropriate for judicial notice under Federal Rule of Evidence 201, including the existence and procedural history of relevant Court

orders and official public records.

**8.** The Court does , by this Order, determine that any Defendant in this action can be criminal referral to any related federal Agencies from any related Defendants or parties in Potential Investigations to any offense in: violated FARA, violated OFAC sanctions, or engaged in unlawful conduct unless and until such determination is properly established through the applicable proceedings.

**9.** Plaintiff's **evidence concerning possible FARA activity may be submitted to, or referred to, the United States Department of Justice for whatever independent determination the Department considers appropriate.**

**10.** Plaintiff's evidence concerning **possible sanctions-related conduct may be submitted to, or referred to, the United States Department of the Treasury, Office of Foreign Assets Control, Department of State, FBI, DOJ, or other competent federal authorities for independent determination.**

**11.** Consider in this Order directs OFAC, the Department of State, DOJ, DHS, or any other Executive Branch agency to take a particular action.

**12.** If necessary after discovery, the Court may conduct an evidentiary hearing concerning whether any Defendant or person acting on a Defendant's behalf engaged in bad-faith retaliation, witness intimidation, obstruction, harassment, or interference with the judicial process.

**14.** If the Court thereafter determines that sanctionable conduct has been established, the Court may impose appropriate sanctions authorized by law, including litigation-related monetary relief, costs, protective relief, or other appropriate remedial measures.

**15.** Plaintiff's rights under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 are preserved, subject to the procedural requirements applicable to any separate motion under those authorities.

**16.** Sensitive exhibits containing personally identifying information, threat information, law-enforcement information, or other information previously ordered sealed **shall remain under seal** or be handled pursuant to the Court's applicable sealing procedures.

17. The Court retains jurisdiction to issue additional orders concerning preservation, discovery, protection of witnesses and Plaintiff, sanctions, or referral as appropriate.
18. **The Court 's Grant to referral and recommendation for appropriate Executive Branch review and action against Defendants on Restrict VISA , Sanctions in Travel , Financial Sanction under Proper and Applicable Federal Laws .**

IT IS SO ORDERED.

Date: ____________________, 2026

---

**CARL J. NICHOLS**
United States District Judge